**UNITED STATES COURT OF APPEALS
FIFTH CIRCUIT**

_____

No. 96-60446

(Summary Calendar)
_____


ALFORD WALTERS; DIRECTOR, OFFICE OF WORKER'S
COMPENSATION PROGRAMS, U.S. DEPARTMENT OF
LABOR,

                              Petitioners,

versus


INGALLS SHIPBUILDING, INC.,

                              Respondent.

---

Petition for Review of a Decision of the
Benefits Review Board
(93-1950)

---

May 19, 1997

Before DAVIS, EMILIO M. GARZA, and STEWART, Circuit Judges.

PER CURIAM:[*]

     Claimant Alford Walters petitions for review of a decision of

the Benefits Review Board ("BRB") with respect to a claim he filed

pursuant to the Longshore and Harbor Worker's Compensation Act

---

     [*]     Pursuant to Local Rule 47.5, the Court has determined
that this opinion should not be published and is not precedent
except under the limited circumstances set forth in Local Rule
47.5.4.

("the Act"), as amended, 33 U.S.C. § 901 *et seq.* In its decision, the BRB affirmed the finding of an administrative law judge ("ALJ") that respondent, Ingalls Shipbuilding, Inc. ("Ingalls"), met its burden of proving the availability of suitable alternative employment by offering Walters a modified burner position within its facility.

While working as a welder-burner for Ingalls in June of 1989, a scaffold board fell from a crane and struck Walters on his left side, injuring his back and neck. Walters sought medical treatment and returned to light-duty burner work in February 1990. Walters's treating physician, Dr. Eugene T. Saiter, prescribed work restrictions discouraging heavy lifting and allowing only intermittent walking, standing, kneeling, stooping, or climbing. Even with the restrictions, however, Walters found the modified burner position to be too demanding physically, and Dr. Saiter removed Walters from work and placed him in physical therapy. Walters returned to the modified burner position after completion of therapy, but again left work to undergo a heart catheterization unrelated to his previous work-related injury. After recuperating from the procedure, Walters again returned to work with additional climbing restrictions authorized by Dr. Saiter.

Walters worked successfully in the modified burner position and as a material runner and jig cutter until August 1990 when he experienced a second work-related injury. While cutting jigs for

scrap metal, an I-beam fell on him, injuring his ankle and aggravating his prior back injury. Walters again received medical treatment and was released to return to work with restrictions on December 19, 1990. Ingalls, however, refused to provide Walters with a modified burner position at that time. Walters has not worked at Ingalls since the date of his second injury.

Ingalls voluntarily paid benefits for temporary total disability under 33 U.S.C. § 908(b) during the periods Walters was unable to work until December 20, 1990. Walters requested a formal hearing to resolve the extent of his work-related disability and entitlement to benefits after that date. On May 13, 1992, after the hearing but before the record was closed, Ingalls offered Walters a light-duty burner position at the same wage. Walters refused this offer.

The ALJ determined that Walters established a *prima facie* case of entitlement to permanent total disability benefits by showing that he was unable to return to his duties as they existed prior to his first injury. The burden then shifted to Ingalls to demonstrate the availability of suitable alternative employment in the relevant community. *Louisiana Ins. Guar. Ass'n v. Abbott*, 40 F.3d 122, 127 (5th Cir. 1994). The ALJ awarded Walters permanent total disability for the period beginning December 20, 1990 and ending April 1, 1991, the date on which Ingalls established the availability of security guard positions that would be suitable for

-3-

Walters.  The ALJ then awarded permanent partial disability from April 1 to May 13, 1992, the day on which Ingalls offered Walters the modified burner position at the same wage.  As of May 13, 1992, the ALJ terminated all disability compensation.

On appeal, the BRB found that the ALJ erred in determining that the security guard positions cited by Ingalls fell within Dr. Saiter's work restrictions and modified the ALJ's order to award permanent total disability benefits to Walters up until May 13, 1992.  The BRB, however, affirmed the ALJ's denial of disability benefits after May 13, 1992, based on Ingalls's offer of a modified burner position within its own facility.  Walters petitions for review of the latter portion of the BRB's decision.

We have jurisdiction to review final decisions of the BRB under 33 U.S.C. § 921(c).  We review decisions of the BRB for errors of law and apply the same substantial evidence standard that governs the BRB's review of the ALJ's factual findings.  *Mendoza v. Marine Personnel Co., Inc.*, 46 F.3d 498, 500 (5th Cir. 1995).  We must affirm the BRB's decision "if it correctly concluded that the ALJ's findings are supported by substantial evidence and are in accordance with the law." *Id*. (citation omitted).[1]

_____

[1]     Citing *Wheatley v. Adler*, 407 F.2d 307 (D.C.Cir. 1968), Walters asserts that under the "true doubt" rule, all factual doubts must be resolved in his favor.  The Supreme Court, however, has explicitly rejected the "true doubt" rule as inconsistent with § 7(c) of the Administrative Procedure Act.  *Director, OWCP v. Greenwich Collieries*, ___ U.S. ___, ___, 114 S. Ct. 2251, 2259, 129 L. Ed. 2d 221 (1994); *see also Mendoza*, 46 F.3d at 501 n.1.

Walters first argues that Ingalls should not be allowed to escape liability for payment of benefits under the Act because it offered him the modified burner position for the sole purpose of discharging liability. Walters cites the fact that Ingalls waited until after the hearing to offer him the position as evidence of bad faith.

An employer may meet its burden of demonstrating the availability of suitable employment by offering the claimant a light-duty position within its own facility. *Darby v. Ingalls Shipbuilding, Inc.*, 99 F.3d 685, 688 (5th Cir. 1996). We can discern no basis for concluding that Ingalls's offer was made in bad faith other than the inference that might be drawn from the timing of the offer. The ALJ, however, concluded that the job offer was a *bona fide* offer of employment. The ALJ's selection among permissible inferences is conclusive, and we will not disturb that choice on review. *Mendoza*, 46 F.3d at 500-01; *Fulks v. Avondale Shipyards, Inc.*, 637 F.2d 1008, 1011 (5th Cir.), *cert. denied*, 454 U.S. 1080, 102 S. Ct. 633, 70 L. Ed. 2d 613 (1981).

Walters next disputes the suitability of the modified burner position in light of his medical restrictions. Walters argues that he "already on three occasions returned to the modified burner positions only to not be able to perform the work or be reinjured."

---

Walters therefore bears the burden of persuasion with respect to his entitlement to permanent total disability benefits.

The evidence supports Walters's claim that he was initially unable to perform the work and left Ingalls in order to undergo physical therapy. However, the evidence shows that Walters left the modified burner position the second time because of his heart condition, not his work-related injuries. Moreover, Walters's reinjury occurred when he was struck by a falling object, an event completely unrelated to his preexisting physical condition. Therefore, Walters's heart-related absence and second injury do not support his contention that he is unable to perform the duties of the modified burner position due to his initial back injury.

The ALJ credited medical evidence that the second accident merely resulted in a disabling injury to Walters's ankle and only briefly exacerbated his previous back injury when he fell to the ground. Therefore, the ALJ found that the initial work restrictions imposed by Dr. Saiter after the first injury, including the additional climbing restrictions, applied for any subsequent employment. The ALJ credited the testimony of Joe Walker, Ingalls's vocational expert, that the modified burner position was light-duty and did not require climbing, heavy lifting, or squatting in tight places. Moreover, the ALJ took into account Walters's own testimony that he satisfactorily performed the responsibilities of the modified burner position after physical therapy but prior to his second injury.

As the factfinder, the ALJ determines the weight to be given the evidence and makes credibility determinations with respect to

expert testimony.  *Mendoza*, 46 F.3d at 500-01.  The ALJ's determination that Walters is able to perform the duties of the modified burner position is supported by substantial evidence in the record.  We therefore DENY Walters's petition for review.